# Goldy v. Commonwealth.

Feb. 24, 1942.

W. C. Hamilton for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Chester Goldy is appealing from a judgment in a bastardy proceeding finding him guilty and directing that he pay to Lacie Walton, the prosecuting witness, the sum of $120 a year for 16 years for upkeep of Lacie's infant child.

Goldy is a married man and has two young sons. For several years he has been a tenant farmer in Jessamine County. He is distantly related to the prosecuting witness, Lacie Walton. Lacie was 18 or 19 years of age in June, 1941. She worked in the Goldy home as a domestic servant for several months during the winter of 1937-38. The proof is conflicting as to the number of times she was there between March, 1938, and October of that year, when she was again employed by the Goldys. Her last period of employment was for some six weeks, and ended around December 1, 1938. Lacie testified that on two occasions late in November (two days apart) Goldy forced her under threat of bodily harm to have sexual intercourse with him. She said that Mrs. Goldy was away from home on both occasions. Goldy denied Lacie's charges and on this phase of the case there is only his word against hers.

Mr. and Mrs. Goldy testified that they had tried to make Lacie's stay in their home pleasant and that they had manifested more than a passing interest in her welfare. Goldy offered testimony as to Lacie's improper conduct with two or three young men who worked for him and stayed in his home. Mrs. Goldy produced two or three letters which she said were written by Lacie and mailed from Frenchburg wherein she inquired about members of the family and as to one of the boys who had worked for Goldy. Checks were offered also which had been made out to Lacie for her wages, the indorsements on which were in the same handwriting as the letters. Lacie denied that anyone stayed in the Goldy home while she worked there and that she knew the boys in question; that she had written letters to Mrs. Goldy; that she was paid by check except on one occasion; and she said that her name was written on that check by the clerk in a store where she had it cashed.

It is urged that the contradiction of Lacie's testimony on the points just mentioned is so strong as to destroy the weight of all her testimony. Frankly, had we been sitting as the jury, we would have probably reached a conclusion different from the one reached by it, but the credibility of witnesses is not for us to determine. Williams v. Commonwealth, 287 Ky. 253, 152 S. W. (2d) 967. Lacie told a straightforward story though, as indicated, her testimony was strongly contradicted on certain collateral points and, of course, Goldy flatly denied having sexual relations with her. There are other circumstances worthy of note, however. Lacie left the Goldy home within a few days after Goldy's alleged offenses. She left without any money and a week before the Goldys wanted her to leave. Lacie admitted getting a check for $20 after she left the Goldy home around the first of December, $18 of which was for her work and $2 for a Christmas present. This is the check she said was indorsed by another person for her. Furthermore, she had a child about nine months after the time she said Goldy forced her to have sexual intercourse with him. We are not prepared to say that there was not sufficient evidence to warrant the submission of the case to the jury. Such being the case we are not disposed to disturb its finding.

It is insisted that the trial court erred in instructing the jury that nine or more of its members could make a verdict, but if less than the whole number agreed upon a

verdict the members agreeing should sign it. This was not error, because it is expressly held in Commonwealth v. Bondie, 277 Ky. 207, 126 S. W. (2d) 148, that a proceeding under the bastardy statute is a civil one and its prosecution and enforcement and all steps taken under it are to be governed exclusively by the rules of civil practice and not by those applicable to criminal prosecutions. It was pointed out in that opinion also that it was improper for the court to require a unanimous verdict of the jury of twelve, since, in a civil action, it is necessary only that nine members of the jury agree upon the facts submitted to them. It was not only permissible, but proper, for the court to instruct the jury as it did in the case before us.

Wherefore, we are forced to the conclusion that the judgment should be and it is affirmed.